## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| THANH MAI, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 6:20-cv-1130-JWL-TJJ |
| ) | |
| CSAA FIRE & CASUALTY ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This diversity action arises out of an automobile accident with an uninsured motorist in Wichita, Kansas, on March 30, 2019. Plaintiff Thanh Mai seeks uninsured motorist insurance coverage from Defendant CSAA Fire & Casualty Insurance Company, doing business as AAA Insurance. The matter is before the Court on Plaintiff's Motion to Compel Discovery (ECF No. 16).

Plaintiff asks the Court to compel Defendant to produce discovery related to one interrogatory and six requests for production. Plaintiff also asks the Court to rule on the propriety of Defendant's response to Plaintiff's first request for admission. The Court finds the parties have conferred in attempts to resolve the issues in dispute without court action, as required by Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2.

The Court held a telephone status conference on November 6, 2020, with Corey Sucher appearing on behalf of Plaintiff and John Gibson appearing for Defendant. At that time, the Court ruled on most of Plaintiff's requests. The rationale for those rulings is further explained below. The Court left open a limited privilege issue and has reviewed documents *in camera* relevant to that issue. Finally, the Court declined to issue a ruling on Plaintiff's request for expenses and attorney's fees during the status conference. As set forth below, the Court now rules on those matters left open, and grants Plaintiff's motion in part and denies it in part.

**I.     Legal Standards**

Defendant objected to the discovery Plaintiff seeks on two grounds: the discovery (1) lacks relevance and proportionality, and (2) is protected by the work-product doctrine.   The Court first examines the legal standards governing these objections, and then applies them to the facts of this case.

A.     Scope of Discovery

Federal Rule of Civil Procedure 26(b)(1) sets out the general scope of discovery. As amended in 2015, it provides as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.[1]

Considerations of both relevance and proportionality now govern the scope of discovery.[2] Relevance is still to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[3] Information still "need not be admissible in evidence to be discoverable."[4]   The amendment deleted the "reasonably calculated to lead to the discovery of admissible evidence" phrase, however, because it was often misused to define the scope of discovery and had the potential to "swallow any other limitation."[5]

---

[1] Fed. R. Civ. P. 26(b)(1).
[2] *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.
[3] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).
[4] Fed. R. Civ. P. 26(b)(1).
[5] *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

The consideration of proportionality is not new, as it has been part of the federal rules since 1983.[6] Moving the proportionality provisions to Rule 26 does not place on the party seeking discovery the burden of addressing all proportionality considerations. If a discovery dispute arises that requires court intervention, the parties' responsibilities remain the same as under the pre-amendment Rule.[7] Specifically, when the requested discovery appears relevant, the resisting party bears the burden to show that the at-issue discovery (1) falls outside Fed. R. Civ. P. 26(b)(1)'s definition of the scope of relevancy, or (2) has such marginal relevancy that potential harm resulting from discovery would outweigh the Rule's presumption of broad disclosure.[8] And when the discovery request's relevancy is not readily apparent on its face, the requesting party bears the burden to show relevancy.[9] Relevancy is generally determined on a case-by-case basis.[10]

"A party asserting an unduly burdensome objection to a discovery request has 'the burden to show facts justifying [its] objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome.'"[11] The objecting party must also show "the burden or expense is unreasonable in light of the benefits to be secured from the discovery."[12] Objections that discovery is unduly burdensome "must contain a factual basis for the claim, and the objecting party must usually provide 'an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.'"[13]

---

[6] *Id.*
[7] *Id.*
[8] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).
[9] *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).
[10] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).
[11] *Stonebarger v. Union Pac. RR Co.*, No. 13-2137-JAR-TJJ, 2015 WL 64980, at *5 (D. Kan. Jan. 5, 2015) (quoting *Shoemake v. McCormick, Summers & Talarico II, LLC*, No. 10-2514-RDR, 2011 WL 5553652, at *3 (D. Kan. Nov. 15, 2011)).
[12] *Id.*
[13] *Id.*

3

B.   Work-Product Doctrine

The work-product doctrine is codified in Fed. R. Civ. P. 26(b)(3)(A):

Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).  But, subject to Rule 26(b)(4), those materials may be discovered if:

(i) they are otherwise discoverable under Rule 26(b)(1); and

(ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.[14]

If the court orders discovery of any work-product documents, "it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."[15]

A party seeking work-product protection must show "(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party."[16]  A mere possibility of litigation is not sufficient; "there must be a real and substantial probability that litigation will occur at the time the documents were created."[17]

The Court evaluates two components when it determines whether documents are prepared "in anticipation of litigation."[18]  The first is causation; the document must have been created because litigation was anticipated (i.e., to prepare for litigation or for trial).  The second is a reasonableness limit on a party's anticipation of litigation; the threat must be "real" and

---

[14] Fed. R. Civ. P. 26(b)(3)(A).
[15] Fed. R. Civ. P. 26(b)(3)(B).
[16] *Buehler v. Family Dollar, Inc.*, No. 17-1241-JTM-GEB, 2018 WL 296016, at *2 (D. Kan. Jan. 4, 2018) (internal quotation marks and citation omitted).
[17] *Id.*
[18] *Kannaday v. Ball*, 292 F.R.D. 640, 648–49 (D. Kan. 2013).

4

"imminent."[19]  Also significant is purpose.  Courts look "to the primary motivating purpose behind the creation of the document to determine whether it constitutes work product.  Materials assembled in the ordinary course of business or for other non-litigation purposes are not protected by the work-product doctrine."[20]

## II.     Analysis

With the legal standards in mind, the Court considers the discovery at issue.

### A.     Privilege Log

First, the Court addresses the sufficiency of Defendant's privilege log.  In response to all of Plaintiff's requests (other than the one relating to Request for Admission 1), Defendant offered a privilege log as an exhibit to its response brief.  The log was intended to notify the Court and Plaintiff why documents in Defendant's claims file are protected by the work-product doctrine.[21]  But the party asserting the privilege must make a "clear showing" that the objection applies by "describ[ing] in detail" the information sought to be protected and providing "precise reasons" for the objection to hold.[22]  It is well settled in this District that an inadequate privilege log may result in waiver of the privilege.[23]  The burden is typically satisfied through the inclusion of a privilege log with sufficient information.[24]  Of the several requirements of a privilege log, the most relevant for this case include: a description of the document (e.g. email, letter, transcript, etc.); the identity of the sender and recipient; sufficient description of the

---

[19] *Id.*

[20] *Id.* at 649.

[21] In the status conference, Defendant clarified that it only intended to assert work-product privilege, not the attorney-client privilege.

[22] *Williams v. Sprint/United Mgmt. Co.*, 245 F.R.D. 660, 667 (D. Kan. 2007) (citing *Ali v. Douglas Cable Comm., Ltd.*, 890 F. Supp. 993, 994 (D. Kan. 1995); *McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 680 (D. Kan. 2000)).

[23] *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 671 (D. Kan. 2005) (citing *Employer's Reinsurance Corp. v. Clarendon Nat'l Ins. Co.*, 213 F.R.D. 422, 428 (D. Kan. 2003)).

[24] *Kannaday*, 292 F.R.D. at 645.

subject matter of the communication; and any other pertinent information necessary to establish the elements of each asserted privilege.[25]

As the Court ruled during the status conference, the privilege log in this case is inadequate. It does not indicate who received the documents, it does not break out the individual documents (instead, grouping them), and it does not indicate if any of the drafters or recipients is an attorney. But these failures do not automatically result in waiver of the privilege.[26] "Waiver is a harsh sanction, reserved only in cases of unjustified delay."[27]

The Court therefore asked defense counsel questions during the status conference, to drill down on exactly what was included in the privilege log. After that discussion, the Court determined that much of the claims file should be produced to Plaintiff, but that the Court will examine one group of documents identified on the privilege log to determine whether those documents may be entitled to protection under the work-product doctrine. The Court will explain those rulings in more detail below.

B.     Interrogatory No. 5 and Request for Production Nos. 3, 4, and 28

The Court does not recount in detail most of the discovery requests addressed in this Memorandum and Order. The parties agreed during the status conference that the requests can be grouped into two general categories: (1) requests relating to Plaintiff's statement taken by Defendant in early April 2019 and (2) the entire pre-suit claims file (which also includes Plaintiff's statement). The Court therefore addresses the discovery requests grouped in these

---

[25] *Id.*

[26] *Queen's Univ. v. Kinedyne Corp.*, 161 F.R.D. 443, 447 (D. Kan. 1995).

[27] *White v. Graceland Coll. For Prof'l Dev. & Lifelong Learning, Inc.*, 586 F. Supp. 2d 1250, 1266 (D. Kan. 2008) (no waiver when delay in submitting privilege log not excessive or unreasonable). Defendant's privilege log was not submitted until Defendant filed its response to the instant motion to compel. It was not timely submitted. But, the Court bases its findings here upon the adequacy/inadequacy of the privilege log rather than the untimeliness of its submission.

general terms.

Plaintiff's first 4 discovery requests relate to Plaintiff's own statement that Defendant took by telephone on April 1 or 2, 2019.[28]  Defendant initially objected to producing the statement under the Kansas statute addressing work product (K.S.A. § 60-226(b)(4)), but agreed in its response brief and during the status conference that Federal Rule of Civil Procedure 26(b)(3) governs instead.

As noted above, Defendant bears the burden to show that Plaintiff's statement was taken and recorded "in anticipation of litigation."  But the only support Defendant has offered is the affidavit of Jim Ives, who is a claim and litigation management representative employed by Defendant.  Mr. Ives stated in his affidavit, "Litigation was anticipated in this matter from the earliest interactions with Plaintiff and later Plaintiff's attorney."[29]  But this conclusory, unsupported statement is nothing more than a blanket claim, which is insufficient to show that a document constitutes work product.[30]  The Court finds the statement of Mr. Ives neither compelling nor helpful.  He also stated that "[t]he Claims File contains mental impressions, conclusions or opinions of the representatives of Defendant concerning the anticipated litigation."[31]  But the affidavit is not precise or clear about which documents of those "contained" in the claims file concern the anticipated litigation.

To the contrary, the facts do not support a finding that the claims file, in its totality, was prepared in anticipation of litigation.  More specifically, with respect to Plaintiff's telephone

---

[28] Defendant's response to Plaintiff's Interrogatory 5 refers to the statement as being taken on April 2, 2019.  Defendant's privilege log, on the other hand, lists the date as April 1, 2019.  For purposes of this Memorandum and Order, the date is immaterial; the statement was taken within a few days after the accident.
[29] ECF No. 21-2, at 1.
[30] *Doe v. USD 237*, No. 16-2801-JWL, 2019 WL 2612941, at *2–3 (D. Kan. June 26, 2019); *McCormick v. City of Lawrence, Kan.*, No. 02-2135-JWL, 2005 WL 1606595, at *6 (D. Kan. July 8, 2005).
[31] ECF No. 21-2, at 1–2.

statement, the Court finds that it was not taken in anticipation of litigation.  Plaintiff's statement was taken only a few days after the accident.  At that time, there was no indication of an attorney being involved.  There is no allegation that Plaintiff had already threatened litigation, or any other fact that would suggest there was a "real" or "imminent" threat of litigation.[32]  And Plaintiff did not file his complaint until more than a year after he gave his statement.

The Court determines that Plaintiff's statement was taken in the ordinary course of business.[33]  There was a car accident involving one of Defendant's insureds.  Every incident involving an insurance claim does not inevitably lead to litigation, and there is no indication of impending litigation other that Mr. Ives' unsupported, blanket statement that litigation was anticipated from the beginning.  The statement taken in early April 2019 is therefore not entitled to work-product protection, and the Court has ordered Defendant to produce it to Plaintiff on or before November 13, 2020.

C.     Request for Production Nos. 2, 12, and 13

As for the other three requests for production at issue in this motion (all phrased differently, but ultimately relating to the entire pre-suit claims file), Defendant raised both a relevancy/proportionality objection, as well a work-product objection.

First: relevance and proportionality.  Although Defendant initially challenged the discovery based on relevance, Defendant agreed at the status conference that the information in the pre-suit claims file was relevant.  It seems now that Defendant's argument has shifted to a version of a proportionality argument: Defendant contends that Plaintiff can obtain the information by other means.[34]

---

[32] *Kannaday*, 292 F.R.D. at 648–49.
[33] *Burton v. R.J. Reynolds Tobacco Co.*, 177 F.R.D. 491, 498 (D. Kan. 1997) ("[E]ven if there is a general prospect of litigation, a document is not protected by work-product immunity if the document was prepared merely in the regular course of business.").
[34] In its response, Defendant made this argument within its discussion of the work-product

Defendant fails to meet its burden. The pre-suit claims file is relevant on its face. This means that Defendant must show that it would be overly burdensome to produce. Defendant has not done that. During the status conference, the Court asked Defendant how voluminous the file was. Defense counsel was uncertain, but estimated 50-100 pages. And although Defendant argues that Plaintiff could obtain the information contained in the claims file by other means, Defendant's logic is unpersuasive and unfairly shifts the burden to Plaintiff when the claims file has been deemed relevant on its face. The Court determines that the content of the pre-suit claims file is both relevant and proportional.

Second: work-product doctrine. This District has held—citing Kansas law—that the initial investigation an insurance company makes is made in the ordinary course of business.[35] In its response brief, Defendant argued that federal cases have held the opposite. But the cases Defendant cites are not persuasive. The first is a case out of the District of Nebraska, which is not binding on this Court.[36] And the second one, *Blair v. United States*, presented a distinguishable situation.[37] In *Blair*, the parties agreed that the matters were work product; that issue was not in dispute.

As the Court ruled in the status conference and in this Memorandum and Order, *supra*, Defendant's privilege log is insufficient. But it does provide enough information for the Court

---

doctrine—which is really the more appropriate use of the argument. ECF No. 21, at 2. But use of the "Plaintiff can access the documents through other means" argument in the work-product context requires an assumption or finding that the documents actually constitute work product. Perhaps sensing that the Court was not inclined to accept Defendant's argument that the entire pre-suit claims file was work product, Defendant shifted its argument slightly in the status conference and used it when discussing relevance/proportionality (which Defendant had not addressed at all in its response). The Court therefore considers Defendant's argument as it applies to the relevance/proportionality determination.

[35] *Travelers Home & Marine Ins. Co. v. HTP, Inc.*, No. 15-1371-EFM-GEB, 2017 WL 5970847, at *6 (D. Kan. Dec. 1, 2017) (citing *Kannaday*, 292 F.R.D. at 649 (citing *Henry Enters., Inc. v. Smith*, 592 P.2d 915 (Kan. 1979)).

[36] *Almaguer v. Chicago, R.I. & P.R. Co.*, 55 F.R.D. 147, 149 (D. Neb. 1972).

[37] No. 87-4140, 1990 WL 171058 (D. Kan. Oct. 3, 1990).

to determine that all of the categories of records in the log except the last one were not prepared in anticipation of litigation. Defendant prepared these records in the ordinary course of business. They were prepared from within days of the accident, up to about six months post-accident. The descriptions of the documents suggest that they are the types of records prepared as a matter of course during a customary insurance investigation of an accident. Defendant has not identified any of the authors as attorneys or otherwise indicated that any particular record was prepared at the direction of counsel or in anticipation of the case proceeding to litigation.

The final line in the log, however, is more ambiguous. It references notes regarding contact from Plaintiff's attorney, negotiations, and settlement offers. While again, the Court cannot discern from the privilege log to whom the notes were directed or at whose direction they were entered, the Court believes that the documents listed in that row, prepared from October 10, 2019 through May 6, 2020—shortly before this case was filed on May 20, 2020—could qualify as work product.

The Court asked Defendant to submit records identified in that line for *in camera* review. The Court has now completed that review. The Court determines that there is a distinct change in the nature of the documentation provided in the file beginning after 2:00 pm on March 27, 2020. Those entries begin on page 5.[38] Before that time (up to the entry labeled 3/27/2020 at 1:11 pm, on page 6), the Court determines that Defendant's employees made notations in the ordinary course of business. After that time, the nature and content of the entries suggest that they were made in anticipation of litigation. Defendant is therefore ordered to provide pages 6-8 to Plaintiff on or before November 19, 2020 at 12:00 pm. Pages 1-5, however, are protected by the work-product doctrine.

---

[38] The entries are presented reverse-sequentially, beginning with the most recent on page 1 and the oldest on page 8.

D.  Request for Admission No. 1

Plaintiff's Request for Admission No. 1 asks, "Please admit or deny that the Plaintiff's uninsured motorist policy (policy number KSSS – 210452967) is a policy given to insure property in Kansas against loss by fire, tornado, lightning, or hail."[39]  Defendant denied the request and referred Plaintiff to "the Declaration page of the relevant insurance policy produced in response to requests for production of documents."[40]  Plaintiff argues that the denial does not fairly respond to the request because, while the Declaration page says that there is comprehensive coverage, Plaintiff cannot verify whether that coverage includes loss by fire, tornado, lightning, or hail.  Plaintiff therefore asks the Court to deem the request admitted.

Federal Rule of Civil Procedure 36(a) governs requests for admission.  It requires that "[a] denial must fairly respond to the substance of the matter."[41]  And if the Court finds that an answer does not comply with the rule, "the [C]ourt may order either that the matter is admitted or that an amended answer be served."[42]

After discussing this matter with the parties at the status conference and learning that Defendant has not produced the insurance policy at issue, the Court determined that Defendant's denial was not responsive to Plaintiff's request for admission.  The Court therefore ordered Defendant to amend its answer to be responsive to Plaintiff's request on or before November 13, 2020.  If necessary to fully answer the question, Defendant should attach the full policy instead of only the declaration page.

E.  Request for Fees and Expenses

Plaintiff also requests the Court order Defendant to pay the attorney's fees associated with this motion and impose additional sanctions on Defendant for its deficient discovery

---

[39] ECF No. 16, at 15.
[40] *Id.*
[41] Fed. R. Civ. P. 36(a)(4).
[42] *Id.* 36(a)(6).

responses and conduct. Fed. R. Civ. P. 37(a)(5)(C) provides that when a motion to compel is granted in part and denied in part, "the court may . . . after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Whether to impose sanctions lies within the court's discretion.[43] The Court "must consider on a case-by-case basis whether the party's failure was substantially justified or whether other circumstances make the imposition of sanctions inappropriate."[44] Although some of Defendant's discovery responses have delayed the discovery process, the Court finds that Defendant acted in good faith and that an award of sanctions would be unjust.

**IT IS THEREFORE ORDERED THAT** Plaintiff's Motion to Compel Discovery (ECF No. 16) is **DENIED in part and GRANTED in part.** In addition to the production of documents and amendment ordered in the November 6 status conference, Defendant must also produce pages 6-8 of the claims file to Plaintiff on or before November 19, 2020 at 12:00 pm.

**IT IS SO ORDERED.**

Dated this 16th day of November, 2020, at Kansas City, Kansas.

/s/ Teresa J. James
Teresa J. James
U. S. Magistrate Judge

---

[43] *Moss v. Blue Cross & Blue Shield of Kan., Inc.*, 241 F.R.D. 683, 699 (D. Kan. 2007).
[44] *Starlight Int'l, Inc. v. Herlihy*, 186 F.R.D. 626, 646 (D. Kan. 1999).